# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

ANDRE PETER TOWNSEND, )
#189415, )
                        )
             Plaintiff, )    Civil Action No. 0:03-2528-RBH-BM
v. )
                        )
CALVIN ANTHONY, WARDEN; )
JEFFREY HUDSON, CAPTAIN; )
JERRY PALMER, SERGEANT; )    **REPORT AND RECOMMENDATION**
WENDELL GOODWIN, )
OFFICER; and KENNETH )
MCKELLER, ACTING WARDEN, )
                        )
            Defendants. )
_____)

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants, all employees of the Department of Corrections.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 6, 2004. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on August 10, 2004, advising Plaintiff of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

Subsequently, an order was entered on August 20, 2004 staying this case pursuant to the Soldiers' and Sailors' Civil Relief Act, as amended, 50 App. U.S.C. § 501, et. seq.. Plaintiff did, however, file a response to the motion for summary judgment on August 27, 2004. The stay of this



case was later lifted by order filed September 12, 2005. In that order, Plaintiff was granted an additional thirty-four (34) days to file any other response to the Defendants' pending motion for summary judgment he wished to file. However, no further filings were received from either party.

After review of the materials filed with the Court, it was apparent that additional information was needed on some specific issues. Therefore, an order was issued on May 15, 2006 directing Defendants to file a supplemental brief, including supporting documentation where appropriate, addressing those issues. Plaintiff was advised that he would have twenty (20) days to respond to this new material. Defendants thereafter filed their supplemental brief on May 30, 2006.[1] Plaintiff did not file any response. The Defendants' motion for summary judgment is now therefore before the Court for disposition.[2]

### Background and Evidence

Plaintiff, a frequent filer of litigation in this Court, alleges in his verified Complaint[3] that on or about November 12, 2001, while he was incarcerated at the Kershaw Correctional Institution (KCI), he was placed in administrative segregation (SMU), where he was "denied recreation". Plaintiff alleges he filed a grievance on July 24, 2001 requesting that he be afforded out

---

[1]In Defendants' supplemental response filed May 30, 2006, Defendants refer to an affidavit and supporting documents. That affidavit was actually filed separately by the Defendant on June 29, 2006.

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



of cell recreation, but that the Defendant Anthony denied his grievance without an investigation. Plaintiff also alleges that on July 30, 2002, he was placed in a "restraint chair" at around 3:45 p.m., and was left in the restraint chair by the Defendant Goodwin until 11:00 p.m.  Plaintiff alleges that prisoners are only allowed to be kept in a restraint chair for four (4) hours at a time, and that while he was in the restraint chair he suffered "severe pain in legs, cramps and chest pains due to the excessive use of the chair."  Plaintiff alleges that a grievance he filed with respect to this incident was again denied by the Defendant Anthony.

Plaintiff alleges that on August 28, 2002 the Defendant Palmer threatened to move him from his cell, and that on September 2, 2002 Palmer looked at him and stated "I haven't choked anybody lately".  Plaintiff alleges that later on September 2, 2002 (at approximately 2:00 a.m.), Palmer opened the food flap on his cell door and "began to maliciously and sadistically spray chemical munitions inside my cell, hitting me in my facial area."  Plaintiff alleges that there was no penalogical justification for this conduct, which constituted "excessive and unnecessary use of force." Plaintiff alleges that Palmer then left and subsequently returned with the Defendant Goodwin, at which time he told Goodwin "this is the nigger that filed the grievance on you."

Plaintiff alleges that he was told he was being moved to another cell, and that he allowed Goodwin to cuff him.  Plaintiff alleges that once the Defendants opened his door, Palmer grabbed him and "started pulling me down the hall in a malicious manner", and that once inside his new cell, Palmer "maliciously smacked me in the face and started choking me until I became almost unconscious."  Plaintiff alleges that during this attack, Goodwin "stood by the door laughing and telling Defendant Palmer to stop and that Plaintiff has learned his lesson for now."

Plaintiff alleges that his new cell was "without any hot or cold running water and the



window was broken out in the cell[.]" Plaintiff alleges that his face and skin were burning from the gas, and he was unable to decontaminate himself without any running water. Plaintiff alleges that by 7:00 a.m. that morning, "the pain was so severe that I had to bust the sprinkler system to get water on my face to cool the burning gas off." Plaintiff alleges that he filed a grievance against Palmer and Goodwin for excessive and unnecessary use of force, but that the Defendant Anthony denied his grievance without any investigation.

Plaintiff also alleges that on September 6, 2002, he was served with a disciplinary charge (1.04 - threatening to inflict harm on Defendant Palmer), but that although he requested the hearing officer to call witnesses, when he had his disciplinary hearing on September 23, 2002 before the Defendant Hudson, Hudson failed to call any of his requested witnesses and also failed to read into the record written affidavits from witnesses to dispute the incident report by the Defendant Palmer. Plaintiff alleges that he received a written disposition signed by the Defendant Hudson stating that no witnesses had been called due to security concerns. Plaintiff alleges that he filed an administrative appeal from this decision, but that his appeal was denied.

Plaintiff alleges that the actions of the Defendants Palmer and Goodwin violated his Eighth Amendment rights, and that the Defendant Palmer also committed the tort of assault and battery under South Carolina state law. Plaintiff alleges that Hudson's actions at his disciplinary hearing violated his right to due process, and that the failure of the Defendant McKeller to overturn his disciplinary conviction also violated his due process rights. Finally, Plaintiff alleges that the Defendant Anthony, by failing to take disciplinary action or to investigate his claims against the Defendants Palmer and Goodwin, violated his Eighth Amendment rights. Plaintiff seeks monetary damages. See generally, Verified Complaint.



In support of summary judgment in the case, the Defendant Goodwin has submitted an affidavit wherein he attests that he is a correctional officer assigned to KCI, and that on September 2, 2002 he was working the night shift.  Goodwin attests that at approximately 2:00 a.m. he went to Plaintiff's cell to assist the Defendant Palmer in moving Plaintiff to another cell.  Goodwin attests that Palmer had observed Plaintiff exposing his penis in the window of his cell, and that he was informed that Plaintiff had been uncooperative and had cursed Palmer and refused to back up to the flap so that he could be moved to another cell, and had also scooped water from his toilet as if to dash Palmer.  Goodwin attests that Plaintiff has a history of sexual misconduct and throwing unknown liquids at or on correctional officers, and that in order to obtain Plaintiff's cooperation, Palmer administered two short bursts of MK-IV (pepper spray) in Plaintiff's direction, all of which is shown on the incident report.

Goodwin attests that, upon his arrival, he assisted Palmer in moving the Plaintiff, although Plaintiff did not want to move and became aggressive.  Goodwin attests that Palmer secured Plaintiff by one arm and he [Goodwin] secured him by the other arm, and they together physically placed Plaintiff in another cell.  Goodwin attests that the only force used by either he or Palmer was to secure the Plaintiff by each arm and escort him to another cell in an effort to restore or maintain discipline and control, and that neither he nor Palmer intended to cause any harm to the Plaintiff, and that further Plaintiff was not injured in any way.  Goodwin also attests that Plaintiff washed his face and decontaminated himself, and that he did not appear to have any significant injury or to have been harmed by the short burst of pepper spray into his cell or by being escorted to another cell.

With respect to Plaintiff's claim concerning the restraint chair, Goodwin attests that the records of the Department of Corrections show that on July  30, 2002, Plaintiff was placed in a



restraint chair from approximately 3:45 p.m. until 7:55 p.m. after medical clearance was given by the medical staff at KCI. Plaintiff was placed in the restraint chair after he threw an unknown liquid substance on corrections officer Edwards. Goodwin attests that he was not involved in placing Plaintiff into the restraint chair, but that he did release him from the restraint chair, at which time he was returned to segregated confinement in the SMU. Goodwin attests that Plaintiff did not appear to have suffered any injury or to have been harmed in any way by his period of time in the restraint chair. [4]

Goodwin has attached to his affidavit as Exhibits a copy of the incident report and incident report supplement relating to the incident of September 2, 2002, the report on use of force relating to the incident of September 2, 2002, and the disciplinary hearing record and reports for the offense(s) charged as a result of that incident. Also attached are copies of the Warden's decision regarding the incident of July 30, 2002 and the appeal documents from that incident, as well as a copy of the Warden's decision relating to Plaintiff's allegation of denial of recreation, and the appeal documents from that decision. Plaintiff's grievance form relating to the disciplinary hearing resulting from the September 2, 2002 decision are also attached, as are the appeal documents from

---

[4]In their supplemental filing, Defendants state that they have been unable to locate the record showing the amount of time Plaintiff was kept in the restraint chair. However, as evidence that Plaintiff's constitutional rights were not violated, they point to Warden Anthony's affidavit wherein he attests that, after obtaining clearance from the medical staff, Plaintiff was placed in the restraint chair for approximately four (4) hours (Anthony Affidavit, ¶ 4), and that Plaintiff's claim that he had been kept in the restraint chair for in excess of four hours was found to be unsubstantiated and without merit by the prison grievance official, as well as by an appeal to the South Carolina Administrative Law Judge Division. See Anthony Affidavit, attached Exhibit (Grievance Record); Dunlap Affidavit, attached Exhibit (same); Goodwin Affidavit, attached Exhibit (same). Defendants also refer to the Defendant Goodwin's affidavit that he was the official who released Plaintiff from the restraint chair, at which time Plaintiff did not appear to have been harmed in any way, as well as to contemporaneous medical records (attached to Defendants' supplemental brief) which show Plaintiff required no medical treatment as a result of having been in the restraint chair.



that grievance. <u>See generally</u>, <u>Goodwin Affidavit, with attached Exhibits</u>.

The Defendants have also submitted an affidavit from David Dunlap, who attests that he is the Associate Warden at KCI. Dunlap's affidavit is submitted for purposes of authenticating the cassette tape on which is recorded the disciplinary hearing proceedings conducted by the Defendant Hudson on September 23, 2002. <u>See generally</u>, <u>Dunlap Affidavit, with Attachment</u>.

The Defendant Anthony has also submitted an affidavit wherein he attests that, during the relevant time period, he was the Warden at KCI. Anthony attests that, among his duties as Warden, was the duty of hearing administrative appeals of inmate grievances. Anthony attests that he decided several administrative appeals from the Plaintiff, all of which he did in good faith and in the belief that his decisions were proper and correct. With respect to Plaintiff's grievance alleging he was denied out of cell recreation privileges, Anthony attests that he determined there was no credible evidence to support Plaintiff's allegation. Anthony attests that Plaintiff was confined in the SMU, and that inmates in the SMU are afforded out of cell recreation privileges five days each week for one hour a day, weather permitting, or unless safety and security reasons dictate otherwise. Anthony attests that he determined that Plaintiff did not always go out for recreation when permitted, and that Plaintiff's grievance was without merit. Attached to Anthony's affidavit as an exhibit are the records relating to Plaintiff's grievance concerning out of cell recreation.

Anthony further attests that SCDC records indicate that on July 30, 2002, Plaintiff threw an unknown substance on corrections officer Edwards, following which he was placed in a restraint chair after corrections officers obtained medical clearance. Plaintiff was in the restraint chair from approximately 3:45 p.m. until approximately 7:55 p.m. Anthony attests that Plaintiff filed an appeal from his grievance relating to this incident, which he [Anthony] denied. The records of



Plaintiff's grievance relating to this incident are attached as an exhibit to Anthony's affidavit.

Anthony further attests that SCDC records show that on September 2, 2002, Sergeant Jerry Palmer observed Plaintiff exposing himself, and that when Palmer came to Plaintiff's cell to discuss his inappropriate behavior, Plaintiff became verbally aggressive, used profanity, and refused a directive to back up to the door of his cell to be restrained in order to be moved to another cell. These records further show that Plaintiff scooped water from his toilet, at which time Palmer administered two short bursts of pepper spray into Plaintiff's cell. Palmer and corrections officer Goodwin then moved Plaintiff to another cell, where Plaintiff decontaminated himself. Anthony attests that Plaintiff filed an administrative grievance appeal of this action, but that the evidence showed that Palmer and Goodwin used only such force as was reasonably necessary to gain control, maintain and restore discipline, and move Plaintiff to another cell after he committed acts of sexual misconduct and refused the lawful directives of the corrections staff. Anthony further attests that there was no evidence that the Plaintiff sustained any significant injury or harm as a result of this incident, and that he dismissed Plaintiff's grievance appeal. Anthony has attached to his affidavit as exhibits documents and records relating to the occurrence of September 2, 2002.

With respect to Plaintiff's grievance appeal filed after he was convicted of threatening to inflict harm on a Department employee in an administrative hearing, Anthony attests that he determined there were no errors in the disciplinary hearing procedure and that the issues raised by the appeal did not warrant a reversal of the conviction. Further, since Plaintiff had no good time left, no punishment was imposed on him. Nor was any additional punishment, disciplinary measures, or loss of privileges imposed on the Plaintiff.

Finally, Anthony attests that he was not involved in, and did not participate in, the



other matters about which Plaintiff complains in his case. See generally, Anthony Affidavit, with attached Exhibits.

The Defendant Hudson has also submitted an affidavit, wherein he attests that he conducted a disciplinary hearing on September 23, 2002 involving disciplinary charges made by Sergeant Jerry Palmer against the Plaintiff arising out of occurrences on the night of September 2, 2002. Hudson attests that Plaintiff was present at the hearing and an audio recording was made at the hearing which has been filed with the Court. Palmer further attests that Plaintiff was not permitted to call witnesses from the yard because of security concerns, and that at the conclusion of the hearing he found Plaintiff guilty of the disciplinary charges based on statements made by Palmer and the evidence. Hudson further attests that on September 23, 2002, he conducted a hearing on a charge of damage, loss, or destruction of property which had been made against the Plaintiff by another inmate (J. Robinson). Hudson attests that Plaintiff did not want his accuser present at the hearing and did not want a counsel substitute, and that based on Plaintiff's own admission of guilt, he found Plaintiff guilty of that charge, and ordered restitution in the amount of $50.00.

Hudson attests that Plaintiff was provided due process and given administrative remedies under Department of Corrections policy, that the hearing was fairly and properly conducted as will appear by the audio cassette of the hearing previously filed with the Court, and that Plaintiff was granted his right to appeal. Attached to Hudson's affidavit are numerous exhibits setting forth the administrative history of these charges, including appeals.

Finally, the Defendant Palmer has submitted an affidavit wherein he attests that on September 2, 2002 he was working the night shift in the KCI SMU unit, when he saw the Plaintiff exhibiting his penis in the window. Palmer attests that when he went to Plaintiff's cell to talk to him



about his behavior, Plaintiff became verbally aggressive and he [Palmer] informed him that if he did not stop his behavior he would be moved. Palmer attests that the Plaintiff then cursed him and told him he was not going anywhere. Palmer attests that he opened the flap to Plaintiff's cell and directed that he back up to the flap so that he could be moved, but that Plaintiff stated "I got something for your ass" and went over to the sink, where he grabbed a cup and scooped some water from the toilet as if to dash him [Palmer] with the contents. Palmer attest that he then administered two short bursts of pepper spray in Plaintiff's direction, and that Plaintiff then dropped the cup he was holding. He then gave Plaintiff another directive to back up to the flap to be moved to another cell, at which time the Defendant Goodwin arrived to assist him in moving Plaintiff to another cell. Palmer attests that Plaintiff became aggressive, and did not want to move to another cell, and that he then secured Plaintiff by one arm while Goodwin secured Plaintiff by the other arm, and they physically walked Plaintiff down the hall to another cell. Palmer attests that the only force used was to hold Plaintiff's arms in order to escort him to another cell, which was done in an effort to restore and maintain discipline and control. Palmer attests that Plaintiff was not injured in any way, and that Plaintiff decontaminated himself in his cell and was passed to the next shift to be seen by a nurse. Palmer attests that Plaintiff was charged with threatening to inflict harm on a corrections officer. Palmer also attests that he never used a racial slur in referring to the Plaintiff.

       Attached to Palmer's affidavit as exhibits are copies of the incident report and incident report supplement relating to the incident of September 2, 2002, a report on the use of force relating to that incident, the disciplinary report and hearing record for the September 2, 2002 offense with respect to the charge of threatening to inflict harm on an employee, and the disciplinary report and hearing record for September 2, 2002 for the charge of damage, loss and destruction of property. See



generally, <u>Palmer Affidavit, with Attachments</u>.

Plaintiff has filed two responses to the Defendants' motion, both on August 27, 2004. One of these responses is labeled "Plaintiff's statement of disputed factual issues". Attached to this document are several exhibits, which include the incident report from the September 2, 2002 incident (Plaintiff's Exhibit 1), the disciplinary report/hearing record for the hearing held on September 23, 2002 (Plaintiff's Exhibit 2), the SMU daily evaluation sheet as well as a step 2 grievance form relating to outdoor recreation (Plaintiff's Exhibit 3), a copy of Plaintiff's health summary for his classification and assignment (Plaintiff's Exhibit 4), and a copy of his witness request for his hearing and prisoner affidavits for use at his hearing (Plaintiff's Exhibit 5).

Plaintiff's second document is an affidavit, wherein he attests that the Defendant Palmer had threatened to use force against him prior to the incident of September 2, 2002 (which Plaintiff contends is supported by the attached affidavits). Plaintiff also states that the Defendants Palmer and Goodwin placed him in a cell with a broken window and no hot and cold running water, which is supported by an affidavit from inmate Thomas Bonner. Plaintiff further attests that Palmer contradicted himself by stating on the disciplinary hearing tape that Plaintiff had decontaminated himself before moving to his new cell, while in the incident report Palmer stated that Plaintiff had decontaminated himself after being placed in his new cell. Plaintiff also attests that he was denied out of cell recreation for a period of eight (8) months. Plaintiff also complains about how the production of SMU evaluation sheets (used to monitor inmates) was handled, and again reiterates his claim that pursuant to "policy/procedure an inmate is not to be placed in a restraint chair for more than four hours." Plaintiff states in his affidavit that he was placed in the restraint chair at 3:45 p.m., and was not released until 11:00 p.m., longer than the maximum four hours. Finally, Plaintiff



complains that when force is used, an officer is supposed to submit a use of force report, but that the Defendant Goodwin never submitted a use of force report. See generally, Plaintiff's Affidavit.

In a supplemental affidavit provided with Defendants' supplemental brief, Hudson attests that no affidavits or written statements were provided by the Plaintiff at his disciplinary hearing, a fact borne out by the transcript of the hearing, and that although Plaintiff had submitted a request for inmate witnesses to appear, he had not discussed this matter with his assigned counsel substitute, and his request was denied due to security concerns relating to moving SMU inmates. See generally, Hudson Supplemental Affidavit.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful consideration of the arguments and evidence submitted, the undersigned finds and concludes



that the Defendants' motion for summary judgment should be granted.

## I.

### (Excessive Force Claim)

When reviewing allegations of excessive force, the Court must consider 1) the need for the application of force,  2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them,  4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner. Whitley v. Albers, 475 U.S. 312, 321 (1986). See Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; see also United States v. Cobb, 905 F.2d 784 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991); Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998); Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994); Fuentes v. Wagner, 206 F.3d 335, 342 (3d Cir. 2000); Wilson v. Williams, 83 F.3d 870, 873 (7th Cir. 1996) [applied to pretrial detainee]; Thomas v. Sawyer, No. 97-2475, 1999 WL 155704 at *3 (N.D.Tex. Mar. 11, 1999); Moore v. Martinez County Jail, No. 98-731, 1998 WL 602113 at *2 (N.D.Cal. Sept. 4, 1998).

Here, the evidence before the Court shows that, with regard to the incident of September 2, 2002, Plaintiff was removed from his cell by two corrections officers after one of those officers had shot a burst of pepper spray into his cell.  While Plaintiff asserts in his verified Complaint that the Defendant Palmer "maliciously and sadistically spray[ed] chemical munitions inside my cell" without penological justification, thereby constituting "excessive and unnecessary use of force", the Court is not required to accept as true such legal generalities and conclusions. See

13



<u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.]; <u>Bender v. Suburban Hospital, Inc.</u>, 159 F.3d 186 (4th Cir. 1998); <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987)["Even though <u>pro</u> <u>se</u> litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].  Plaintiff has offered no evidence to support his general and conclusory statements.  Indeed, the Court notes that, in addition to the voluminous affidavit and documentary evidence offered by the Defendants to contradict Plaintiff's claims, one of Plaintiff's own prisoner affidavits reflects that the Defendant Palmer believed Plaintiff was attempting to dash him with toilet water prior to his administering the burst of pepper spray. <u>See Makio Stowers Affidavit</u>, at ¶ 5.

        The most serious charge that Plaintiff makes is that Palmer "smacked" him in the face and started choking him upon arrival at his new cell.  However, Plaintiff offers no evidence to support this claim.  None of the affidavits from Plaintiff's fellow inmates support this claim, nor has any medical evidence been presented to show that Plaintiff suffered any injuries whatsoever as a result of his having been forcibly moved from one cell to another.  <u>See</u> <u>Strickler v. Waters</u>, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical and mental injury, of course, is inadequate to survive a motion for summary judgment]; <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"].

        The fact that pepper spray was used in this incident also does not mandate that Plaintiff's claim go forward, as the use of mace, tear gas or pepper spray by prison officials is not a <u>per se</u> violation of a prisoner's constitutional rights when used appropriately. <u>Williams v. Benjamin</u>,

14



77 F.3d 756, 763 (4th Cir. 1996); Norris v. District of Columbia, 614 F.Supp. 294 (D.D.C. 1985),

aff'd, 787 F.2d 675 (D.C.Cir. 1986); Peterson v. Davis, 551 F.Supp. 137 (D.Md. 1982), aff'd without

op., 729 F.2d 1453 (4th Cir. 1984); O'Connor v. Keller, 510 F.Supp. 1359 (D.Md. 1981); Brock v.

Robinson, 378 F.Supp. 1263 (W.D.Pa. 1974); Collins v. Schoonfield, 363 F.Supp. 1152 (D.Md.

1973); Davis v. United States, 316 F.Supp. 80 (E.D.Mo. 1970), aff'd 439 F.2d 1118 (8th Cir. 1971);

Williams v. Dehay, Nos. 94-7114, 94-7115, 1996 WL 128422 **2-3 (4th Cir. March 21, 1996). The

exhibits provided to the Court show that only a small amount of pepper spray was used by Palmer.

See Court Exhibit #50, p. 7 [showing 20 grams of pepper spray was used].Plaintiff's conclusory and

unsubstantiated allegation in his verified Complaint that the Defendant Palmer used an "excessive"

amount of chemical spray, or did so "maliciously", without any supporting evidence or

documentation, is not sufficient to show that his constitutional rights were violated. See  Papasan,

478 U.S. at 286. Hence, there is no evidence that, to the extent a chemical spray was used in this

instance, a constitutional violation occurred under the facts and evidence presented. Williams, 77

F.3d at 763; Justice v. Dennis, 834 F.2d 380, 383 (4th Cir. 1987), vacated on other grounds, 490 U.S.

1087 (1989); Bailey v. Turner, 736 F.2d 963 (4th Cir. 1984); see also Riley v. Dorton, 115 F.3d 1159,

1166-1167 (4th Cir. 1997); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979).[5]

---

[5]With respect to Plaintiff's claim that one of the Defendants used the term "nigger" during the incident of September 2, 2002, or made other disparaging or even threatening remarks, even if this claim were true, the use of such terms, however offensive, does not amount to a constitutional violation. Sluys v. Gribetz, 842 F.Supp. 764, 765, n.1 (S.D.N.Y. 1994), aff'd, Sluys v. Gribetz, 41 F.3d 1503 (2d Cir. 1994); Shabazz v. Cole, 60 F.Supp.2d 177, 199-200 (D.Mass. 1999) ["Although this court does not condone the verbal abuse with the racial epithets that Shabazz received from Cole, verbal threats and insults between inmates and prison officials are a 'constant daily ritual observed in this nation's prisons.'"]; (quoting Shabazz v. Pico, 994 F.Supp. 460, 474 (S.D.N.Y. 1998)). See also Batista v. Rodriguez, 702 F.2d 393, 398 (2d Cir. 1985); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Malsh v. Austin, 901 F.Supp. 757, 763 (S.D.N.Y. 1995) ["Verbal assault [or abuse], standing alone, is not a…cognizable injury in a § 1983 civil rights action"]; Shelly v.



Plaintiff's admitted placement in a restraint chair on July 30, 2002 also does not in and of itself constitute an excessive use of force. The use of devices such as restraint chairs or four-point bed restraints have repeatedly been found to be constitutional when used appropriately, and there is no evidence before the Court that Plaintiff was kept in the restraint chair for an excessive period of time, or that Plaintiff suffered any injuries as a result of his placement in the restraint chair. While Plaintiff alleges in his complaint that he was kept in the restraint chair for in excess of four hours, he has provided no evidence to support this claim, while the evidence provided by the Defendants shows that this was not the case. Plaintiff also noticeably neglects to state why he had been placed in the restraint chair; however, the evidence before the Court shows that it was as a result of his own disruptive behavior. Again, no constitutional violation has been shown with regard to this incident. See Fuentes v. Wagner, 206 F.3d 335, 345-346 (3d Cir. 2000), cert. denied, 531 U.S. 821 (2000); cf. Williams v. Burton, 943 F.2d 1572 (11th Cir. 1991) [Eighth Amendment not violated when inmate kept in four-point restraints for 28 ½ hours after inmate cursed, threatened to kill officers and spat on them, threw bodily fluids at them, creating a disturbance in the prison.]; Green v. McCurry, No. 02-4326, 2003 WL 21826549 (N.D.Ill. Aug. 5, 2003).

In any event, Plaintiff has failed to present any evidence to show that he suffered any more than a de minimis injury as a result of the Defendants' actions, if that. Plaintiff's general and conclusory claims that he suffered "severe pain in legs, cramps and chest pains" as a result of having been placed in the restraint chair, or that he was otherwise physically abused by the Defendants

---

Johnson, 684 F.Supp. 941, 946-947 (W.D.Mich. 1987), aff'd, 849 F.2d 228 (6th Cir. 1987) [alleged harassment and threats even with a guard pointing a loaded gun at an inmate did not rise to the level of constitutional violation]; Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) [holding that verbal harassment or abuse, where sheriff laughed at Plaintiff and threatened to hang him, was not sufficient to state a constitutional deprivation under § 1983].



Palmer and/or Goodwin during the incident of September 2, 2002, are not sufficient to survive summary judgment absent any evidentiary support for these claims. <u>Papasan</u>, <u>supra</u>; <u>Morgan</u>, <u>supra</u>; <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; <u>Thaddeus-X v. Wodniak</u>, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury; <u>see also</u> <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim]. <u>See</u> 42 U.S.C. § 1997e(e) ["No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injuries suffered while in custody without a prior showing of physical injury."]; c*f*. <u>Zehner v. Trigg</u>, 952 F.Supp. 1318, 1323-1324 (S.D.Ind. 1997); <u>Siglar v. Hightower</u>, 112 F.3d 191, 193-194 (5th Cir. 1997)[claim based on sore and bruised ear lasting for three days was de minimis, and thus, Plaintiff failed to raise valid Eight amendment claim for excessive use of force nor did he have requisite "physical injury" to support claim for emotional or mental suffering.].

Based on the foregoing, the undersigned finds that Plaintiff's excessive use of force claim is without merit, and should be dismissed.

## II.

### (Claim Regarding Disciplinary Hearing)

Plaintiff's due process claim relates to his conviction on the disciplinary charge of threatening to inflict harm on an employee, and the Defendant Hudson's alleged failure to call any of his requested witnesses to dispute the incident report filed by the Defendant Palmer. However, in the prison disciplinary setting, an inmate is entitled to only a minimal standard of due process. If the following requirements are satisfied, prison officials have met this minimal standard.



1.      Advance written notice of the charges;

2.      A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and

3.      The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

Wolff v. McDonnell, 418 U.S. 539, 563-576 (1974); Luna v. Pico, 356 F.3d 481, 487-488 (2d Cir. 2004).

Here, Plaintiff does not dispute that he was given advance written notice of the charges and that he also received a written statement setting forth the decision and the evidence relied on for the decision. The records from the hearing indicate that Plaintiff's witnesses were not called due to security concerns because these witnesses were themselves all also SMU inmates. The record from the hearing also clearly indicates that Plaintiff did not provide any affidavits to the hearing officer at that time. The undersigned has, however, reviewed the affidavits which have now been submitted by the Plaintiff, and the only inmate who could have conceivably assisted the Plaintiff in his presentation based on the information contained in these affidavits is inmate Charles Jenkins, who attests that "at approx. 2:00 p.m. I saw Sgt. Palmer go to inmate Townsend's cell, open his food flap and gassed inmate Townsend for no reason whatsoever." It is not clear from this affidavit whether Jenkins could see what the Plaintiff was doing; however, (as previously noted) another of Plaintiff's inmate affidavits indicates that Palmer at the very least believed Plaintiff was about to throw toilet water on him. See Stowers Affidavit.

While Plaintiff obviously wanted his witnesses to be present, the undersigned does not find under the evidence presented that a genuine question of fact has been presented as to whether a constitutional violation occurred. In an institutional setting, the fact-finder need only show that

18



some evidence existed to support his conclusion.    Superintendent, Massachusetts Correction Institution v. Hill, 472 U.S. 445, 456-457 (1985); see Diggie v. Cotton, 344 F.3d 674, 677 (7th Cir. 2003).  The Supreme Court in Superintendent evidenced a distaste for allowing the federal courts to review the outcome of prison disciplinary actions, and under the applicable caselaw a disciplinary decision is sufficient to pass scrutiny under the due process clause if it is supported by "some" evidence.  Id; Baker v. Lyles, 904 F.2d 925 (4th Cir. 1990); Sales v. Murray, 862 F.Supp. 1511 (W.D.Va. 1994); McClung v. Shearin, No. 03-6952, 2004 WL 225093 (4th Cir. Feb. 6, 2004).  Since the evidence before the Court meets this standard, this claim is without merit and should be dismissed. Wolff, 418 U.S. at 563-576; Stewart v. Thigpen, 730 F.2d 1002 (5th Cir. 1984); Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981).

### III.

### (Recreation Claim)

Finally, Plaintiff claims that he has been denied out of cell recreation, amounting to a constitutional violation.  Again, the only "evidence" submitted by the Plaintiff to support this claim is the general and conclusory statement in his verified Complaint.  Conversely, the Defendants have submitted documentary exhibits which address this claim, with supporting affidavits. See Richardson Affidavit.  Defendants further note in their supplemental brief that the log books for the SMU confirm that Plaintiff himself refused opportunities for outdoor recreation. See Exhibit-Log Records. The undersigned again does not find that a genuine issue of fact has been presented as to whether a constitutional violation has occurred based on the evidence presented. See generally, Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Wilson v. Cook



County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights, as detainee failed to allege remedial injury]; Westmoreland v. Brown, 883 F.Supp. 67, 76 (E.D.Va. 1995); Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at * 5-6 (7th Cir. Apr. 6, 1995) ["generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity"].  Therefore, this claim should be dismissed.

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted** with respect to Plaintiff's federal claims, and that these claims be **dismissed**. To the extent Plaintiff has intended to assert any state law claims, those claims should be **dismissed**, without prejudice. This will allow any such claims to be dealt with in state court. See United Mine Workers v. Gibbs, 387 U.S. 715 (1966), and its progeny.

The parties are referred to the Notice Page attached hereto.

_____

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 30, 2006



**Notice of Right to File Objections to Magistrate Judge's Report and Recommendation**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street Columbia, South Carolina 29201
